We'll hear argument now in the case of Tonyan v. Dunham's Athleisure Corporation. Mr. Reinhart. Good morning. May it please the Court, I represent Angela Tonyan in this case. Summary judgment on Ms. Tonyan's wrongful termination claim should be reversed for two reasons. First, there are disputed issues of fact in the record regarding the essential functions of Ms. Tonyan's employment position as store manager. Second, there are disputed issues of fact in the record regarding Ms. Tonyan's ability to perform the essential functions of the store manager position. As to essential functions, Dunham's contends, and the District Court agreed, that constant and frequent physical labor was an essential function of Ms. Tonyan's position as store manager. Constant being defined by Dunham's as 100% of the time. Of course, this question of essential functions is, as a matter of law, a fact issue, and Ms. Tonyan contends that a reasonable jury could conclude that constant and frequent physical labor was not an essential function of Ms. Tonyan's position as store manager. Mr. Reinhart, let's unpack that a bit. Is your argument that the record admits of different percentages as to how much labor was part of being a manager? Or are you making an argument that, by definition, a manager is not going to be engaged in some of the more physical activities that Ms. Tonyan was? I'm making both arguments, Judge. Let me start with that, because the essential function analysis is set forth in 29 CFR 1630.2. And the amount, as the Court knows, evidence of essential functions includes the amount of time on the job spent performing a particular function. In the record here, we have testimony from Jeremy Gilson, who was Ms. Tonyan's direct supervisor, who had the most contact with her, who was a regional manager overseeing other store managers, and who had himself been a store manager for seven and a half years. And his testimony was that he expected Ms. Tonyan, as a store manager, to perform physical labor 20 to 30% of the time. 20 to 30% of the time is not constant, it is not frequent, it's occasional. And it's undisputed in this case that she could perform all required physical tasks, at least occasionally, according to what Dunham defines as occasionally. Mr. Gilson's testimony was, in fact, consistent with Ms. Tonyan's testimony, that she spent the majority of her time on management and supervisory duties, and directly contradicts the testimony of Dan Cieslik, the testimony that was adopted by the District Court, that 70 to 80% of Ms. Tonyan's time was required to be engaged in physical labor. Of course, I would note that even 70 to 80% of the time is not constant. There is a written job description, well, let me rephrase that. There are written job descriptions referenced in the record. One is a store manager job description, which clearly applied to Ms. Tonyan, because it has the, when she was store manager at Menominee, because it has the store number 9144, that job description talks about minimum requirements with respect to lifting and moving. There are two other store management job descriptions referenced in the record. One from 8 of 2011, when she was at the Rice Lake store, store 127, clearly not applicable. And the other one from 9-11, but neither contains minimum requirements language. I will concede and acknowledge that the job descriptions that Dunham's relies upon contains a section on the second page about essential functions, which appears to be largely boilerplate. But that job description cannot be read, or excuse me, the essential functions section cannot be read alone or in isolation. It has to be taken in the context of the entire job description, which contains sections for position summary, primary objective, and lists 25 specific tasks and responsibilities. Notably, there is nothing about physical labor in the position summary, in the primary objectives, or in the responsibilities, let alone constant and frequent. Getting to your other point, an employer's judgment is evidence of essential functions, and Dunham's judgment clearly was that the store manager is exempt from the Fair Labor Standards Act. That at least indicates a determination by Dunham's or an exercise of judgment that Tanya's primary duty was executive work as opposed to manual labor. Another of the factors to be considered is the consequences of Ms. Tanya not performing constant and frequent physical labor, and the evidence in the record indicates the consequences were nonexistent or minimal. There is evidence in the record about Dunham's planning to allocate more employee hours to the store due to Tanya's work restrictions, and the evidence in the record also indicates they did that on one single occasion. Wouldn't the evidence in the record, Mr. Reinhart, that she kept injuring herself while working counter against that? Well, that is certainly an argument that the defendants could have made by raising an affirmative defense of direct threat. They didn't raise that affirmative defense, and if they did raise that affirmative defense, they would be required to do the individualized assessment under the totality of the circumstances with some medical evidence, and that was never done. Why is that an affirmative defense as to whether or not she can actually perform evidence of whether or not she can perform the essential functions of the job? Well, Your Honor, I took your question. Your first question, I think, was slightly different, and that was whether or not she could do the job because there was a risk of injury. The second question I think you asked is whether or not she could perform the essential functions, and I believe the evidence on that is really not in dispute. Certainly the permanent restrictions are not in dispute. Ms. Tanyan testified that she could and did perform all required physical labor by using either her right arm or her left arm or both, along with the numerous assistive tools and devices available like ladders, poles, carts, lifts, and taking short breaks. But you don't have to take her word for it because we have two physicians' opinions in the record from which a reasonable jury could conclude that she could perform the essential functions of her position, the first being the defendant's own IME evaluation in late October of 2015 that was prepared for purposes of Dunham's defending a worker's compensation claim. And in that opinion, Dunham's representative opined that she did not need any activity restrictions with respect to her right arm and shoulder, and he opined that she, in fact, needed to use the right shoulder more rather than less. And then there is Dr. Keeble's opinion that was distinguished based upon the different job descriptions that she could perform the essential functions of the store manager position without accommodations and that the only restrictions as to the store management job description were frequent reaching outward rather than constant and occasional reaching above the shoulder rather than frequent. And then he went further and opined that she could perform all duties with accommodations and assistive devices such as ladders and lifts. I am not aware of anything in the record indicating that there's something she could not do. She did delegate duties and responsibilities, not because that was an accommodation, but because that was both expected of the store managers. Mr. Reinhart, you have two minutes remaining. I will reserve for rebuttal. All right. Thank you, counsel. Mr. Davis. Good afternoon, Your Honors. May it please the court. Before I address some of the points made by opposing counsel, I think it's important to take a step back to look at what this court's case law is on the actual test for determining when the job duties are essential functions. Because when applying that test, as the district court found, it should be pretty clear that the physical labor is an essential function for Dunham's managers. Now, the main factor, as this court has held, is the employer's business judgment. What does the employer believe the essential functions can be? In fact, this court has said generally it will not second guess an employer's business judgment. Here, Dunham's business judgment is clear. It's a discount toward a good store. The intent is to keep labor costs low, keep up a high level of customer service. So all employees, including managers, are responsible for the physical labor that's required, not just to stock the store, but also to assist customers with merchandise. And Tanya admits this. Similar to the previous case, this is the case out of the Western District of Wisconsin, where the parties have to admit or deny factual statements on the record. And here, Tanya admitted, and I'm referring to her response to the finding of fact, paragraph 40 in ECF number 35. Her claim that this job is mostly 90% nonphysical, quote, contradicts the company's expectations of its store management throughout the company's 232 stores and the experiences of other store management. That's her admission. So this is what Dunham expects of its managers, no question. When we look at the other factors for what is an essential function, these all confirm that physical labor is an essential function of the job. First, let's talk about the written job descriptions. There are only two in the record that Judge Crabb relied upon. The court's aware there was some ancillary briefing in this court where one of the job descriptions that my friend referred to is not in the record. The two that are in the record are identical. They actually contain a section that is called essential duties, and that includes constant handling and reaching outwards, frequent reaching overhead, frequent lifting of 40 pounds, among other things. It's also admitted in the record that Dunham came up with these job descriptions based on field research and observation of the time spent by actual Dunham's managers. That admission is paragraph 18 in the same document, ECF number 35. So these are what the actual observations of actual store managers, these constant handling of frequent reaching, frequent lifting, those are consistent with what actual managers at Dunham's do. The next factor, the experience of past and current incumbents on the job. Undisputed again, Judge Crabb found that the two managers who immediately preceded Ms. Dunham did engage in the sort of frequent physical labor that's called for in the job descriptions. The current incumbent, Mr. Lean, also testified that he spent 60 to 70% of his job performing these types of physical duties. Again, that's not disputed, that's his observation. And then the consequences. As stated, and as the district court found, that if somebody, if the managers don't do physical labor, somebody else is going to have to. So either somebody has to be hired to pick up the manager's slack, or these physical duties have to now be placed onto the other employees, which can impact customer services, as Judge Crabb found. So every factor as to what are essential functions favors Dunham's in this case. And that's really the backbone of Judge Crabb's opinion, and we believe that should easily be affirmed. Now let me address some of the points that my friend made here. First, he mentioned Mr. Gilson. We have pointed out in the brief that this statement that Mr. Gilson said that only 20 to 30% of the time was engaged in his physical labor is a misrepresentation of the record. We have cited to his actual deposition testimony, we quoted in the brief, that 20 to 30% was how much time Mr. Gilson, his experience, and how much time was spent reaching overhead. He immediately went on to say that about 50% of his time was spent lifting up to 50 pounds. Again, just anticipating what was mentioned in the reply brief, they claim we waived this argument. I've not heard an argument from an attorney before that they can misrepresent deposition testimony and then say that the court has to accept it, but we don't even have to go there. They admitted at the summary judgment stage, and I'm now going to cite to UCF 35, Statement of Fact 32, that this 20 to 30% testimony by Mr. Gilson was expressly referring to reaching. They also admit later that the 50% lifting, that he immediately thereafter said that 50% of the time was spent in lifting. So this argument that Mr. Gilson's testimony is inconsistent with the job descriptions or the experience of other managers is just not accurate. Now let's remember here, it's important to remember, when we talk about the record shows that there's nothing that Mrs. Tanya can't do, her own doctor imposed a restriction of no more than two pounds of lifting with her right hand. She had previous restrictions of 15 pounds on her left hand. So the record is clear that she had to spend, even if you just take that 20 to 30% of overhead reaching, that is an essential function of the job. And she cannot do it because the record is clear that she is not able to reach overhead. And as Judge Staney pointed out, her injuries in this case, one of the key injuries was when she was using a pole to try to take jackets down from overhead, and she injured her shoulder doing that. And it does exactly go to the point that Judge Staney pointed out. This is not a question of a direct threat. This is evidence that suggests that, in fact, this was a physically demanding job. She was performing those duties. In the short remaining time I have left, I would like to go to the expert reports. The first, as Judge Crabb held, and we haven't heard rebuttal on this point, this was a workers' compensation examination by a third party. It was not intended to analyze essential functions, the ability of Mrs. Tanya to perform essential functions. And as we pointed out in the brief, it's unclear what job description this third party doctor was looking at. It's clear she didn't look at all the same factors that her own doctor did several months later when he imposed those permanent severe restrictions on Mrs. Tanya's ability to work. And speaking to the other expert report, the litigation expert who analyzed this two years after the fact, he very clearly relied on Mrs. Tanya's testimony that 90 percent of her job was non-physically demanding, which, if it ever was true, was only because Dunham provided temporary accommodations. But his opinion as to what's important is if you look at the brief, even if you were to accept that opinion, he himself, as the plaintiff admits, concedes that she could not engage in constant reaching outward, which is an essential function. Dr. Hebel concedes that she could not frequently reach above the right shoulder, which is an essential function. And Dr. Hebel does not address at all this very important issue that she had a two-pound lifting limit and that this job does require lifting of up to 40 pounds, including overhead. Because if you'll remember from the record, Dunham stores at least half or more of its merchandise above shoulder level. This is the way the stores were laid out. And this is why Mrs. Tanya was using a pole to retrieve jackets, because they were overhead. So this expert report does not at all suggest that Mrs. Tanya could perform the essential functions of the job. And if the court has any other questions, I would waive their hand during my time. Thank you, Mr. Davis. Anything further, Mr. Reinhart? Yes, Judge. I would like to use my two minutes. First of all, with respect to constant reaching, you've already heard from Dunham's counsel that the testimony of the various people, Jeremy Gilson, Mr. Cieslak, acknowledged that constant reaching was not required because constant was defined by Dunham as 100%. And obviously, to do all the tasks and responsibilities that are listed in the job description that they rely upon, you're not going to be engaging in reaching 100% of the time, which underscores the point that she could and did perform physical tasks. The only dispute is about the amount of time that was required to perform the physical task and whether she could do that. Now, opposing counsel has also pointed out an issue that they have with their opinion, and that is there's an assumption, without any evidence to support it, that somehow Ms. Tanya had to be able to perform the tasks with her right shoulder. Well, the work restrictions on her left shoulder indicate that she could, and she did indeed use her left shoulder to do the reaching tasks and the lifting tasks. And she had a 15-pound restriction, and I've heard no evidence that, or seen no evidence in the record that she couldn't do it with her left shoulder. As to the issue of Dr. Hebel, we just have an entire disagreement on that. He clearly stated in his opinion that he was, and he made a distinction between his opinion as to her ability to perform the essential functions based upon the two different job descriptions, the store manager and the store management job descriptions. There's no indication in that report that he based his opinion upon what she told him as opposed to looking at the job description. You're welcome. The case is taken under advisement.